MOYER v. METAL STAMPING CO.

(Circuit Court, S. D. New York. March 20, 1909. On Rehearing, April 5, 1909.)

PATENTS (§ 328*)—ANTICIPATION—THILL COUPLING.

 The Moyer patent, No. 591,561, for a thill coupling, *held* void for anticipation on satisfactory evidence that a device admitted to have all the essential features of that of the patent was made by another, and was in public use prior to the application for the patent.

 [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Howard P. Denison, for complainant.

William A. Megrath (Samuel G. Metcalf, of counsel), for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HAZEL, District Judge. This action in equity arises out of the alleged infringement of letters patent No. 591,561, issued October 12, 1897, to the assignors of complainant for thill coupling. According to the specification, the thill coupling has a fixed jaw or shackle eye section, to which is attached a spring connected to a movable jaw or eye section put together in such a way as to securely hold between them a coupling pin or bolt, and to release or disengage such pin or bolt by reversing the spring or turning it downward. Claim 1 in controversy clearly sets forth the elemental character of the device. To join a fixed and movable jaw so as to confine between them a coupling pin or bolt was old, and the employment of a spring attached to one of the jaws or blocks to open and close the coupling portions was also a familiar contrivance at the date of the patent in suit. Such a coupling device is shown in the patent to Pardee, No. 382,828, dated May 15, 1888. In the Moyer patent in suit the spring. which is the new element of the combination, is curved, the ends pointing in the same direction. One end is pivotally connected to the coupling part or jaw, while the spring at the other end extends forward further than the other to enable it to lock while the jaw is in a closed position. When the spring is turned or moved backward, the jaw is opened, and the shaft or bolt of the vehicle may be readily released. The spring is pivotally connected at one end to the fixed jaw and at the other to a link or bar which is preferably connected to the movable jaw. Such arrangement of the parts, as shown in figures 1 and 2 of the drawings, will automatically open and close the jaws from a middle position by the action of the spring. In figures 6 and 7 is shown a modification of the coupling which consists of connecting a link on the free end of the spring and extending across the upper part of the movable jaw. In the Pardee patent is shown a loose spring secured at one end to a clamp block which fits into a hook shaped jaw, and which operates to hold the clamp block in its position against the coupling pin. When the block is released, it flies upward with the spring. The spring in the patent in suit is thought essentially different, in that it produces a different result. It noticeably facilitates and makes easier the opening and closing of the pivoted jaw, and therefore the Pardee patent is not anticipatory. The Worrest thill coupling manufactured and sold by the defendant is structurally slightly different from that of complainant, but it is operated in substantially the same way, and certainly produces a like result. It has a curved spring connected at one end to a movable jaw, while the other end is pivoted to a bar in such a way as to enable opening and closing the jaws by a forward and backward movement of the spring. I think infringement would not be avoided if it were not that the defense of prior use is thought fairly established.

The latter defense arises from the claim that the coupling device or its substantial equivalent has been in public use for more than two years before the application for the patent in suit was filed with the Commissioner of Patents. It was admitted by the complainant that the Winans device claimed by the defendant to have been manufactured and in public use since 1894 has all the elements of the claim in controversy, and, if prior public use has been proven, anticipates the

patent in controversy. The defendant gave evidence to show that in 1894 one Winans made two pair of thill couplings, one pair being continuously used by him on his carriage for about four years, and the other sold by him to the witness McCormick, to whom he also transferred an interest in his unpatented invention for the sum of $100. The receipt and transfer, dated September 20, 1894, are exhibits in the case. The witness McCormick testified to the identity of the prior coupling in evidence, and corroborates the witness Winans as to the time in 1894 when the coupling was sold and delivered to him, and when he purchased an interest in the invention. It is shown that the coupling thills were made in the presence of one Hurley, a disinterested witness, who identified them, and testified positively that they were made by Winans in 1894. He fixes the date by the fact that in 1893 and 1894 and the early part of 1895 he was in the employ of the New York Roofing Company, and that it was during this time that he came in contact with Winans, and saw the couplings. His certitude is based upon seeing the coupling before he left the employ of the New York Roofing Company, which was in March, 1895. Winans also exhibited the coupling to the witnesses Bauer, Tyler, Galvin, and one McIlhargy in the year 1894, and again in 1895 to the witness Galvin, president of the defendant, with a view of interesting him in its manufacture. Subsequently in 1905, he delivered the coupling to the defendant. The pair of couplings sold to the witness McCormick for $10 are shown to have been in continuous use from the time of the sale until the month of August or September, 1905, when they were delivered to the defendant. Witness Dawson testified that he saw the couplings on McCormick's wagon at different times during the years 1894 to 1899. Witness Quinn testified that in the latter part of August, 1895, he saw a pair of thill couplings resembling those in evidence on a wagon of the New York Contracting Company. Other testimony and circumstantial details corroboratory of the asserted prior use is found in the record. The said witnesses were fully cross-examined, and their testimony was not discredited in any material particular. As most of the testimony was given by disinterested witnesses, the court does not feel disposed to declare that such testimony is mistaken or not of a convincing character. The complainant gave testimony in opposition.

The witness Bowers testified that the Winans coupling was not made in 1894, but that, in fact, it was made in the month of May, 1905, in the shop of the defendant under his direction, and at the request of the president of the defendant. To carry out the instructions given him, he designed the Winans exhibit from the specification in suit on a block of steel, and he testifies that a fellow employé, named Shannon, at his request made the exhibit coupling from his sketch. He further testified that the spring made by Shannon was brittle, and that he then requested another fellow employé named Droz to harden it, and that a bolt in the thill eye was removed by another employé named Messenger. When the coupling was finished, he delivered it to Mr. Galvin, who on the next day suggested certain alterations appearing on a sheet of paper, and remarked that his pat-

ent solicitor indicated the desired changes, but that he did not wish to be quoted as having done so. The witness Shannon testified that the Winans exhibit coupling was made by him in 1905, at the request of Bowers, and he assigned reason for his positive identification. The witness Droz testified that in May or June, 1905, at the request of Bowers, he hardened the spring and worked on the thill eye part of the coupling. Other witnesses were sworn to corroborate Bowers, among them John Keenan, who was in the employ of the defendant at the time Bowers swore the coupling was made. He says that Bowers gave the Winans coupling to Shannon, with instructions to take it apart, and, after putting the parts together, to place the coupling on his desk. He also stated that Shannon conferred with him regarding the manner of putting the parts together, and he is positive that the coupling was not made by Shannon. Such testimony is clearly contradictory of the testimony of Bowers and Shannon in its most important features, and is corroborative of the witness Galvin, who testified that Bowers in the summer of 1905 asked permission to take the Winans coupling, and that he subsequently noticed that the device had been taken apart. The defendant contends that the testimony of Bowers was false and that from motives of ill will he procured other testimony to corroborate him. The court does not deem it necessary to allude to the many details claimed to be contradictory or an impeachment of the witness Bowers. The witnesses Shannon, Ogrera, Droz, and Chamberlain were formerly in the employ of the defendant, and Shannon and Ogrera were in the employ of Bowers at the time they testified. They probably have not willfully misstated the facts, but evidently confused the Winans device with another, or Shannon in taking such device apart and putting the same together, as testified by Keenan, sought the assistance of other workmen, who therefore are under the mistaken impression that the exhibit was produced or originated by him. As to Bowers, it is satisfactorily shown that he was not an impartial or unbiased witness. He had been discharged from the employment of the defendant and his rectitude challenged by its president. Moreover, there was litigation pending between him and the defendant arising from debt and from the asserted use by him of the defendant's trade-name. Either from rivalry in trade, his discharge from the defendant's employ, or reflections on his honesty the hostility of Bowers can scarcely be doubted upon close scrutiny of his testimony and the surrounding circumstances. His deep interest and feeling in the pending litigation is evidenced by his unsolicited interview with Mr. Bradley, who is interested on the side of complainant, and his subsequent search for witnesses to corroborate his testimony. In view of his interest in the present litigation, his relations with the defendant are unquestionably competent to affect his credibility and indicate a motive for false swearing. His arrest and indictment at the instigation of the defendant after he gave his testimony does not impair his credibility, and I have not so considered it; but his voluntary admissions as testified to by Galvin after the arrest that, if released and the proceeding dropped, he would correct his testimony upon the subject of prior use,

implying that he would testify to a different state of facts, ought not to be overlooked.

To determine the question of prior use under the facts and circumstances of this case is extremely difficult, and I have not concluded to reject the testimony of the complainant on this point without adequate deliberation. Ordinarily, where the evidence relative to prior use is contradictory or has been impeached or the circumstances are such as to discredit it, the court will not consider such defense as satisfactorily proven. But in the present case the witnesses were acquainted with devices of the description in suit. National Casket Co. v. Stolts, 157 Fed. 392, 85 C. C. A. 300. They were interested in wagon thills and wagon paraphernalia owing to their occupations, and I think the disinterestedness of some of those who gave important testimony will not fairly admit of the court holding that complainant's testimony is entitled to probative force, or that it is of sufficient weight to generate a reasonable doubt as to the asserted prior public use of the Winans coupling.

Because I entertain no such doubt as to the Winans thill coupling, the bill must be dismissed, with costs.

### On Rehearing.

I have considered the application of complainant for rehearing, and have examined the reference in the petition to the testimony of Hurley, Otto Bauer, and Keenan. I have also considered the point that the exhibit Winans coupling shows no fraying or wear. According to the proofs, the pair of couplings retained by Winans was used much less than the pair with which he parted, which probably would account for any absence of fraying of the edges. Winans testified that the witness Hurley saw the coupling made, and Hurley says that he was present in 1894 when the coupling was in separate parts in Winan's shop, and that later he saw it in its completed form. Such testimony would seem to support the statement of the court in the opinion that Hurley was present when the coupling was made. Otto Bauer testified that the coupling which he saw in 1905 was new, and painted black. The coupling in evidence was in the fire in defendant's factory and later was found in the débris, and it has the appearance of having been painted black. It is claimed that the testimony of Bauer corroborates the claim of complainant that the coupling was actually made in 1905, as testified to by Bowers, and as evidenced by its new appearance and absence of fraying of the edges, but, giving consideration to the evidence of prior use in its entirety, such an inference is unwarranted.

The petition for rehearing is denied.